UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CATHERINE MAYER,

                Plaintiff,

        -against-

TIME INC.,

              Defendant.

Docket No. 17 cv 05613 (DLC)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

Date:   December 8, 2017
         Melville, New York

/s/ Lisa M. Griffith
Lisa M. Griffith
Daniel Gomez-Sanchez
LITTLER MENDELSON, P.C.
290 Broadhollow Road
Suite 305
Melville, NY  11747
631.247.4700
lgriffith@littler.com
dsgomez@littler.com

/s/ Jean L. Schmidt
Jean L. Schmidt
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
212.583.9600
jschmidt@littler.com

Attorneys for Defendant
  TIME INC.

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ..................................................................... 2

ARGUMENT ................................................................................ 4

I.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE
    OF FORUM NON CONVENIENS ......................................................... 4

    A.  Plaintiff's Decision To Sue Time Inc. In The Southern District Of New
        York Was Not Motivated By Convenience And, Thus, Is Not Entitled To
        Deference ...................................................................... 5

    B.  The U.K. Is An Adequate Alternative Forum, Which Plaintiff Deliberately
        Avoided ........................................................................ 6

        1.  TMEL is Subject to Service of Process in the U.K., and Time Inc.
            Consents to Service in the U.K ............................................ 6

        2.  The U.K. Has Authority to Adjudicate Plaintiff's Discrimination,
            Retaliation, and Fraud Claims ............................................. 7

    C.  A Balance Of The Private And Public Interest Factors Weigh Heavily In
        Favor of Dismissal ............................................................. 9

        1.  Private Interest Factors .................................................. 9

        2.  Public Interest Factors .................................................. 12

II. PLAINTIFF'S CLAIMS ARE TIME-BARRED BY THE 180-DAY STATUTE
    OF LIMITATIONS APPLICABLE TO CLAIMS UNDER TITLE VII AND THE
    ADEA BECAUSE SHE IS NOT A RESIDENT OF NEW YORK ............................... 14

    A.  The 180-Day Statute Of Limitations Applies To Title VII And ADEA
        Claims Where The State Or Local Agency Charged With Investigating
        Claims Of Employment Discrimination Lacks Jurisdiction To Grant Relief ...... 14

    B.  The Well-Pled Factual Allegations Confirm That A Majority Of Plaintiff's
        Claims Are Time-Barred By The 180 Day Statute Of Limitations ............... 17

III. PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM FAILS TO STATE A
     CLAIM AND, ALTERNATIVELY, IS BARRED IN PART BY LACHES ..................... 17

    A.  As An At-Will Employee, Plaintiff Could Not Have Justifiably Relied On
        Any Alleged Material Misrepresentation Or Omission .......................... 19

**TABLE OF CONTENTS**

(CONTINUED)

B.      Plaintiff Does Not Allege With Any Particularity The Specific Damages
        She Suffered As A Result Of The Alleged Fraud ................................. 20

C.      Plaintiff Has Not Alleged With Particularity That Time Inc. Intended To
        Defraud Her ........................................................................................ 23

D.      Plaintiff Cannot Demonstrate Causation ............................................ 23

E.      Plaintiff's Fraudulent Inducement Claim Stemming From Her 2012
        Acceptance Of The Europe Editor Position, And The Denial Of Two
        Senior Editors Is Barred By The Doctrine Of Laches ........................ 24

CONCLUSION ........................................................................................................ 25

TABLE OF AUTHORITIES

PAGE(S)

**Cases**

Allison v. Round Table Inv. Mgmt. Co., LP,
   2010 U.S. Dist. LEXIS 113937 (S.D.N.Y. 2010)...................................................19, 20, 22, 23

Arias-Mieses v. CSX Transp., Inc.,
   630 F. Supp. 2d 328 (S.D.N.Y. 2009)...................................................................................14

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...............................................................................................................17

Bakalar v. Vavra,
   500 Fed Appx. 6 (2d Cir. 2012)............................................................................................24

Banculescu v. Compania Sud Americana De Vapores,
   2012 U.S. Dist. LEXIS 167980 (S.D.N.Y. 2012)............................................................3, 11

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)...............................................................................................................18

Benham v. eCommission Solutions, LLC,
   118 A.D.3d 605 (1st Dept. 2014).........................................................................................16

Castillo v. Shipping Corp. of India,
   606 F. Supp. 497 (S.D.N.Y. 1985) ........................................................................................8

Connaughton v. Chipotle Mexican Grill, Inc.,
   135 A.D.3d 535, 538 (1st Dept. 2016)...............................................................................20,22

Cotemar S.A. DE C.V. v. Hornbeck Offshore Servs., L.L.C.,
   569 Fed. Appx. 187 (5th Cir. 2014) (per curiam) ..................................................................8

Dardengo v. Honeywell Int'l, Inc. (In re Air Crash Over the Midatlantic),
   792 F. Supp. 2d 1090 (N.D. Cal. 2011) ................................................................................8

Dezaio v. Port. Auth. of New York & New Jersey,
   205 F.3d 62 (2d. Cir. 2000)..................................................................................................15

EEOC v. Bloomberg LP,
   967 F. Supp. 2d 816 (S.D.N.Y. 2013)..................................................................................16

Esheva v. Siberia Airlines,
   499 F. Supp. 2d 493 (S.D.N.Y. 2007) (Cote, J.)...............................................................5, 13

**TABLE OF AUTHORITIES**
(CONTINUED)

**PAGE(S)**

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,
   375 F.3d 168 (2d Cir. 2004)...........................................................................20

Fried v. LVI Servs.,
   500 Fed. Appx. 39 (2d Cir. 2012) ..................................................................16

Ghorpade v. MetLife, Inc.,
   2014 U.S. Dist. LEXIS 172408 (S.D.N.Y. 2014) ..........................................16

Hoffman v. Parade Pbls.,
   15 N.Y.3d 285 (2010) .....................................................................................15

Holz v. Rockefeller & Co.,
   258 F.3d 62 (2d Cir. 2001)..............................................................................14

Iragorri v. United Techs. Corp.,
   274 F.3d 65 (2d Cir. 2001) (en banc)........................................................4, 5, 6

Jelks v. Citibank, N.A.,
   2011 U.S. Dist. LEXIS 381 (S.D.N.Y. 2011) ................................................18

Kregos v. AP,
   3 F.3d 656 (2d Cir. 1993)...........................................................................22, 24

Lama Holding Co. v. Smith Barney, Inc.,
   88 N.Y.2d 413 (1996) .....................................................................................19

Lfoundry Rousset SAS v. ATMEL Corp.,
   No. 14 CV 1476, 2015 U.S. Dist. LEXIS 95165, *14-*15 (S.D.N.Y. July 21,
   2015) ............................................................................................................9, 12

Lust v. Nederlandse Programma Stichting,
   501 Fed. Appx. 13 (2d Cir. 2012) .............................................................4, 6, 12

Mangiafico v. Blumenthal,
   471 F.3d 391 (2d Cir. 2006)..............................................................................3

Martinez v. Bloomberg LP,
   883 F. Supp. 2d 511, aff'd 740 F.3d 211(2d Cir. 2014) ..............................7, 8

McLaughlin v. Bankers Trust Co.,
   1998 U.S. Dist. LEXIS 9703 (S.D.N.Y. 1998)........................................9, 12, 13

Meyercord v. Curry,
   832 N.Y.S.2d 29 (1st Dept. 2007) ...................................................................20

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

MSC Mediterranean Shipping Co. v. Koninklijke Boskalis Westminster NV,
    569 F.3d 189 (4th Cir. 2009) ...............................................................................8

Pal v. N.Y. Univ.,
    2007 U.S. Dist. LEXIS 99042 (S.D.N.Y. 2007)......................................19, 20, 22

Palacios v. Coca-Cola Co.,
    499 Fed. Appx. 54 (2d Cir. 2012) ....................................................................7, 8

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981).............................................................................................5

Pollux Holding, Ltd. v. Chase Manhattan Bank,
    329 F.3d 64 (2d Cir. 2003)...........................................................................4, 9, 12

Ranza v. Nike, Inc.,
    793 F.3d 1059 (9th Cir. 2015) .................................................................4, 5, 12, 13

Seales v. Panamanian Aviation Co.,
    2009 U.S. Dist. LEXIS 11855 (E.D.N.Y. 2009).............................................5, 13

Smalley v. Dreyfus Corp.,
    10 N.Y.3d 55 (2008) ........................................................................................19

Ulrich v. Moody's Corp.,
    2014 U.S. Dist. LEXIS 145898 (S.D.N.Y. 2014), modified by 2014 U.S. Dist.
    LEXIS 138082 (S.D.N.Y. 2014)........................................................................16

Van Zant v. KLM Royal Dutch Airlines,
    80 F.3d 708 (2d Cir. 1996)................................................................................14

Vento v. Chief Constable of West Yorkshire Police (No 2),
    [2003].................................................................................................................6

Zipes v. Trans World Airlines,
    455 U.S. 385 (1982)..........................................................................................14

**Statutes**

29 U.S.C. § 216(b) ...................................................................................................6

29 U.S.C. § 626(d) .................................................................................................14

29 U.S.C. § 626(d)(1) ............................................................................................14

42 U.S.C. §§ 1981a(a)(1), (b) .................................................................................6

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE(S)

42 U.S.C. §2000e-5(e) ....................................................................................14

42 U.S.C. § 2000e-5(k) ....................................................................................6

Employment Rights Act, 1996, c. 18, §§ 94-97 ............................................7

Equality Act, 2010 ..........................................................................................12

Equality Act, 2010, c. 15, §§ 4-27 ................................................................7

Equality Act, 2010, § 123(1)(a) ....................................................................7, 8

Equality Act, 2010, § 124(6) ..........................................................................6

Limitation Act, 1980, c. 58, § 2 ....................................................................7

N.Y.C. Admin. Code § 8-101, et seq. ............................................................15

N.Y.C. Admin. Code §§ 8-103, 8-105 ..........................................................15

N.Y. EXEC. LAW § 290, et seq. ......................................................................15

N.Y. EXEC. LAW §§ 293, 295 ........................................................................15

**Regulations**

29 C.F.R. § 1601.13(a)(2) ..............................................................................14

29 C.F.R. § 1626.7(a) ......................................................................................15

**Rules**

Fed. R. Civ. P. Rule 9(b) ................................................................................17

Fed. R. Civ. P. Rule 12(b)(6) ........................................................................2, 19

## PRELIMINARY STATEMENT

In opposition to Defendant's motion to dismiss, Plaintiff filed a fifty-seven page Amended Complaint that wholly fails to cure the deficiencies in the original Complaint, thus warranting dismissal on the grounds that her claims are  brought in the incorrect forum, and are baseless and untimely.

First, the case should be dismissed under the doctrine of *forum non conveniens*.  As Plaintiff admits, she is a resident of the United Kingdom ("U.K."), and has resided in the U.K. since she was a young child.  She was recruited for and assigned to Time Magazine Europe Limited ("TMEL") in the U.K.  The impact of the decisions about which she complains was felt by Plaintiff only in the U.K.  The majority of the witnesses identified in the Amended Complaint, and those Plaintiff claims to have received statements from, appear to all be located outside the United States ("U.S.").  Plaintiff's renaming of Time Inc. to "Time New York" in her Amended Complaint does not alter the facts.  There is no legal entity entitled "Time New York." Plaintiff's inclusion of the term "New York" as many times as possible in the Amended Complaint does not change the fact that Plaintiff filed this case in the wrong country.  Plaintiff should have filed this action in the U.K. and it must now be dismissed.

Second, to the extent the Court should find that Plaintiff's discrimination and retaliation claims are properly brought in the U.S., Plaintiff, a non-resident, was required to file her charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") within 180 days of the allegedly wrongful conduct.   Plaintiff admits that she did not file a charge of discrimination with the EEOC until July 15, 2015.  Accordingly, any claims that accrued prior to January 16, 2015, which include the majority of her claims of gender and age discrimination, and retaliation, are time-barred and should be dismissed.

<u>Third</u>, Plaintiff's "fraudulent misrepresentation" claim should be dismissed because Plaintiff fails to plead her claim with the requisite particularity, or on the basis of laches, in part.

For these reasons, and as set forth more fully below, the Amended Complaint must be dismissed in its entirety.

## STATEMENT OF FACTS[1]

TMEL hired Plaintiff in 2004 to work in London, United Kingdom as a Senior Editor. <u>See</u> Am. Compl. ¶ 16; Taylor Decl. ¶ 5. Throughout her eleven year career at TMEL, Plaintiff worked in London and held a number of roles, including London Bureau Chief, European Editor and Editor-at-Large. <u>See</u> Taylor Decl. ¶¶ 5-8; Am. Compl. ¶ 19.

In or around August 2014, Jim Frederick, Time Inc.'s International Editor, passed away. Plaintiff's many allegations that Jim Frederick contributed significantly to the discrimination she suffered on the basis of her gender and/or age, are all fortuitous as he is no longer here to defend himself. In this regard, it must be noted that Plaintiff herself honored Mr. Frederick in the rather laudatory obituary she wrote for him, which was published in The Guardian on August 26 2014. <u>See</u> Ex. O, annexed to the Gomez-Sanchez Decl.

On or around January 6, 2015, TMEL met with Plaintiff to commence the process under the employment laws of the U.K. to eliminate Plaintiff's position due to "redundancy." <u>See</u> Am. Compl. ¶¶ 93-94; Taylor Decl. ¶¶ 9-10. TMEL and Plaintiff continued the discussion through several meetings. <u>See</u> Am. Compl. ¶¶ 93-94; Taylor Decl. ¶¶ 11-12.[2] On January 28, 2015,

---

[1]  The Statement of Facts is derived from the well-pled allegations in the Amended Complaint, the Declaration of Michael Taylor, dated December 8, 2017 ("Taylor Decl."), and the Declaration of Daniel Gomez-Sanchez, dated December 8, 2017 ("Gomez-Sanchez Decl.").

[2]  The Second Circuit has long "held that for the purposes of deciding a motion to dismiss pursuant to Rule 12(b)(6): '[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the

TMEL advised Plaintiff that it would be terminating her employment.  See Taylor Decl. ¶¶ 12-13.  On January 29, 2015, TMEL sent Plaintiff correspondence to her home in London confirming TMEL's decision to terminate her employment, effective April 10, 2015.  Id. ¶¶ 13-14, and Ex. A, annexed thereto.

By March 31, 2015, at the latest, Plaintiff retained the law firm of McAllister Olivarius.  Indeed, on or around March 31, 2015, Ms. Ann Olivarius, sent correspondence to Time Inc. concerning the termination of Plaintiff's employment.  See Gomez-Sanchez Decl. ¶ 5.  On June 8, 2015, Ms. Olivarius advised Time Inc.'s attorneys that she had been retained solely to pursue Plaintiff's claims in the U.S.  Id. ¶ 6.  By letter, dated August 28, 2015, Plaintiff's counsel informed Time Inc. that she secured "approximately 30 witness statements . . . and the number is growing."  Id. ¶ 7.  Upon information and belief, the 30 witness statements Plaintiff secured are from individuals who worked with Plaintiff in the U.K.  In addition, the Amended Complaint identifies approximately eighteen (18) witnesses that, upon information, reside outside of the U.S.  Thus, it appears that a majority of the material witnesses reside outside of the United States.  See id. ¶¶ 8-28; Taylor Decl. ¶¶ 15-17.  Further, the witnesses Plaintiff identifies in her EEOC intake questionnaire are both located outside of the United States.  See Am. Compl. Ex., A, p. 4.

Plaintiff's Amended Complaint alleges that on July 15, 2015, she filed a charge of discrimination with the EEOC.  See Am. Compl. ¶ 11.  Accordingly, any claims that accrued

---

document integral to the complaint.'"  Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)).  Here, Plaintiff's claims heavily rely on the termination of her employment.  Accordingly, Ex. A, annexed to the Taylor Decl. which incontrovertibly identifies the date the termination decision was communicated to Plaintiff is an integral part of the Complaint.  Further, it is well-established that in determining a motion to dismiss under the doctrine of *forum non conveniens*, a court may consider evidence outside of the pleadings.  See Banculescu v. Compania Sud Americana De Vapores, 2012 U.S. Dist. LEXIS 167980, at *6 (S.D.N.Y. 2012).

prior to January 16, 2015, which include the majority of her claims of gender and age discrimination, and retaliation are time-barred and must be dismissed.

<u>**ARGUMENT**</u>

**I.     PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF** ***FORUM NON CONVENIENS***

The appropriate forum for Plaintiff to bring her claims is the U.K., not the U.S.  Plaintiff is a resident of the U.K. who is seeking to litigate discrimination, retaliation, and common law fraud claims that arose out of her employment in the U.K. and had an impact on her only in the U.K.

In considering a motion to dismiss a complaint based on *forum non conveniens*, the court must determine: (1) whether the plaintiff's choice of forum is entitled to deference; (2) whether the alternative forum proposed by defendants is adequate to litigate the plaintiff's claims; and (3) whether a balance of public and private interest factors favor dismissal of the claims.  <u>See</u> <u>Pollux Holding, Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64, 73-76 (2d Cir. 2003) (dismissing plaintiff's claims on *forum non conveniens* grounds and holding that such claims should be heard in England); <u>see also</u> <u>Lust v. Nederlandse Programma Stichting</u>, 501 Fed. Appx. 13, 14 (2d Cir. 2012) (summary order); <u>Iragorri v. United Techs. Corp.</u>, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc); <u>see also</u> <u>Ranza v. Nike, Inc.</u>, 793 F.3d 1059, 1076-77 (9th Cir. 2015) (dismissing plaintiff's Title VII and ADEA claims on the grounds of *forum non conveniens*).

Here, Plaintiff's choice of the U.S. as a forum should be afforded little, if any, deference. The U.K. is an adequate alternative forum, and the balance of both the public and private interests favor dismissal of Plaintiff's claims.  Thus, Plaintiff's Title VII, ADEA, and common law fraud claims should be dismissed under the doctrine of *forum non conveniens*.

A.   **Plaintiff's Decision To Sue Time Inc. In The Southern District Of New York Was Not Motivated By Convenience And, Thus, Is Not Entitled To Deference**

As a general rule, a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen his/her home forum because it is reasonable to assume that the choice is convenient.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981).  When the plaintiff is foreign, however, this assumption is much less reasonable.  Id.  While Plaintiff is a U.S. citizen, the U.S. is not her home forum because Plaintiff is not a U.S. resident and has not been since she was a "child." See Am. Compl. ¶ 3; Wikipedia, the Free Encyclopedia, Catherine Mayer, at https://en.wikipedia.org/wiki/Catherine_Mayer (last visited December 4, 2017).  Thus, Plaintiff's selection of the U.S. should be afforded less deference because it cannot be assumed her selection of the U.S. was based on her convenience.  See Seales v. Panamanian Aviation Co., 2009 U.S. Dist. LEXIS 11855, at *35, *39 (E.D.N.Y. 2009) ("Because plaintiff was living abroad at the time this action was commenced, the deference due to his choice of a New York forum is diminished."); see also Iragorri, 274 F.3d at 74 (citing Alcoa S.S. Co., Inc., v. M/V Nordic Regent, 654 F.2d 147, 152, 154 (2d Cir. 1980) (en banc) ("American citizenship alone is not a barrier to dismissal on the ground of *forum non conveniens* . . . .")); Ranza, 793 F.3d at 1076-77 ("The selection of a United States forum by an expatriate United States citizen residing permanently abroad . . . is entitled to less deference").

Moreover, Plaintiff cannot demonstrate that the U.S. is a convenient forum because, as explained *infra* in Point I.C.1, the material events at issue in this litigation took place in the U.K., TMEL employed Plaintiff in the U.K., and a majority of the material witnesses are located outside the United States.  See Esheva v. Siberia Airlines, 499 F. Supp. 2d 493, 498 (S.D.N.Y. 2007) (Cote, J.) (holding that where the witnesses and evidence are abroad, plaintiff does not deserve deference in her choice of forum).

Plaintiff's choice of the U.S. also should be afforded little deference because it was motivated by forum-shopping reasons.  This is evidenced by the fact that Title VII and the ADEA provide for damages unavailable in the U.K.  <u>Compare</u> 42 U.S.C. §§ 1981a(a)(1), (b) (capping compensatory and punitive damages at $300,000), 42 U.S.C. § 2000e-5(k) (attorneys' fees), 29 U.S.C. § 216(b) (attorneys' fees), <u>with</u> The Equality Act, 2010, § 124(6) (no provision for punitive damages); <u>Vento v. Chief Constable of West Yorkshire Police (No 2)</u>, [2003] IRLR 102; <u>Simmons v. Castle</u>, [2012] EWCA Civ 1039 (capping feelings awards at £33,000).

In short, Plaintiff's decision to file her lawsuit in this Court was motivated by the potential for greater damages and the increased media coverage such a filing would generate, not convenience. <u>Cf.</u> <u>Lust</u>, 501 Fed. Appx. at 14; <u>Iragorri</u>, 274 F.3d at 71-72 ("the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the easier it becomes for the defendant to succeed on a *forum non conveniens* motion").  Thus, Plaintiff should be afforded little, if any, deference in her choice of the U.S. forum.

### B.   The U.K. Is An Adequate Alternative Forum, Which Plaintiff Deliberately Avoided

To establish that the U.K. is an appropriate forum to adjudicate Plaintiff's discrimination, retaliation, and fraud claims, Defendant must demonstrate: (1) that it can be served with process in the U.K.; and (2) that the U.K. "can decide the subject matter of the dispute."  <u>Lust</u>, 501 Fed. Appx. at 14.

### 1.   TMEL is Subject to Service of Process in the U.K., and Time Inc. Consents to Service in the U.K.

TMEL, an entity operating in the U.K., employed Plaintiff in the U.K., and is subject to service of process in the U.K.  <u>See</u> Taylor Decl. ¶ 3.  To the extent Plaintiff insists on bringing an action against Time Inc., it consents to service in the U.K.  <u>See</u> Gomez-Sanchez Decl. ¶ 29.

**2.      The U.K. Has Authority to Adjudicate Plaintiff's Discrimination, Retaliation, and Fraud Claims**

It is well-established that the U.K. has authority to adjudicate Plaintiff's discrimination, retaliation, and fraud claims.  See The Equality Act, 2010, c. 15, §§ 4-27 (prohibiting gender and age discrimination, harassment, and victimization (i.e. retaliation)); Shogun Finance Limited v. Hudson (FC), [2003] UKHL 62 (Session 2002-03) (discussing a fraudulent misrepresentation claim in the U.K.).  Plaintiff may also raise a claim for unfair dismissal in the U.K. which is available to individuals with more than two years' employment.  See Employment Rights Act, 1996, c. 18, §§ 94-97.

While Plaintiff's claims may be time-barred under The Equality Act by the applicable statute of limitations (The Equality Act, 2010, § 123(1)(a)), this is due to Plaintiff's deliberate decision to pursue the action in the United States.[3]  See Palacios v. Coca-Cola Co., 499 Fed. Appx. 54, 56 (2d Cir. 2012) (recognizing that "a plaintiff may not overcome a *forum non conveniens* dismissal based on the unavailability of an alternative forum when the unavailability is a product of its own purposeful conduct") (quotations and citations omitted); cf. Martinez v. Bloomberg LP, 883 F. Supp. 2d 511, 521-22 (holding that plaintiff's voluntary decision to allow the statute of limitations to expire in England on plaintiff's discrimination claims did not make the forum selection clause unenforceable), aff'd 740 F.3d 211(2d Cir. 2014).  Plaintiff knew, or should have known, about the applicable timeframe for filing the claim.  Indeed, Plaintiff worked in the U.K., is a resident of the U.K., and is a founding member of the Women's Equality Party in the U.K.  See Am. Compl. ¶¶ 3, 16; Taylor Decl. ¶¶ 5, 8; "WEP President sues TIME magazine" published on the Women's Equality Party website August 7, 2017

---

[3]      Plaintiff's fraudulent misrepresentation tort claim has a six year statute of limitations in the U.K. and, therefore, is not time-barred.  See Limitation Act, 1980, c. 58, § 2.

http://www.womensequality.org.uk/mayer_sex_discrimination (last visited December 8, 2017). Further, Plaintiff has been represented by adequate U.K. counsel since at least March 31, 2015 (Gomez-Sanchez Decl. ¶ 5), prior to the termination of her employment.  See Am. Compl. ¶ 94; The Equality Act, 2010, § 123(1)(a).

Plaintiff's decision to allow the statute of limitations to lapse on her claims in the U.K. and bring her claims in the U.S. was clearly calculated and deliberate.  Indeed, on June 8, 2015, Ms. Olivarius advised counsel for Time Inc. that Plaintiff "engaged [her law firm] solely to pursue her claims in the U.S." See Gomez-Sanchez Decl.  ¶ 6.  Judge Gerard Goettel, sitting in the Southern District of New York, said it best when he held that "it would be a strange world if a litigant could 'bootstrap' h[er]self into a New York court by missing the statute of limitations in the proper forum."  See Castillo v. Shipping Corp. of India, 606 F. Supp. 497, 503-04 (S.D.N.Y. 1985) (holding that plaintiff's purposeful decision to allow the statute of limitations to lapse in the Dominican Republic and India does not make the Dominican Republic and India inadequate forums).

Plaintiff's deliberate conduct in choosing to forego her claims in the U.K. estops her from claiming that the expiration of the statute of limitations on her U.K. claims makes the U.K. an inadequate forum.  See Palacios, 499 Fed. Appx. at 56; Castillo, 606 F. Supp. at 503-04; see also Cotemar S.A. DE C.V. v. Hornbeck Offshore Servs., L.L.C., 569 Fed. Appx. 187, 190-91 (5th Cir. 2014) (per curiam); MSC Mediterranean Shipping Co. v. Koninklijke Boskalis Westminster NV, 569 F.3d 189, 203 (4th Cir. 2009); Dardengo v. Honeywell Int'l, Inc. (In re Air Crash Over the Midatlantic), 792 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011) ("A party should not be allowed to assert the unavailability of an alternative forum when the unavailability is a product of its own purposeful conduct."); cf. Martinez, 883 F. Supp. 2d at 521-22, aff'd 740 F.3d 211.

Accordingly, the U.K. is the appropriate forum for Plaintiff's claims.  See, e.g., Pollux Holdings, Ltd., 329 F.3d at 75 (expressing high regard for the courts in England); McLaughlin v. Bankers Trust Co., 1998 U.S. Dist. LEXIS 9703, *7 (S.D.N.Y. 1998).

### C.   A Balance Of The Private And Public Interest Factors Weigh Heavily In Favor of Dismissal

#### 1.   Private Interest Factors

The private factors weigh heavily in favor of dismissing Plaintiff's action and requiring her to proceed in the U.K.  The private factors to be considered include "the relative ease of access to evidence, the cost to transport willing witnesses to trial, the availability of compulsory process for unwilling witnesses, and other factors that make the trial more expeditious or less expensive."  See Lfoundry Rousset SAS v. ATMEL Corp., 2015 U.S. Dist. LEXIS 95165, *14-15 (S.D.N.Y. 2015), aff'd Guerrini v. Atmel Corp., 667 Fed. Appx. 308 (2d Cir. 2016) (summary order); Pollux Holding, Ltd., 329 F.3d at 75.

It will be difficult and cost prohibitive to litigate this matter in the Southern District of New York for numerous reasons.  First, access to witnesses in this litigation will be extremely difficult.  In August 2015, Plaintiff's counsel informed Defendant that she secured over thirty (30) witness statements in support of her claims, "and the number is growing."  See Gomez-Sanchez Decl. ¶ 7.  Based upon a review of available records, the majority of those individuals reside in the U.K., where Plaintiff worked and currently resides, and in other jurisdictions outside the United States.  Id. ¶¶ 8-28; Taylor Decl. ¶¶ 15-17.  It also appears Plaintiff intends to rely on statements made by, among others: Karen Leigh; William Lee Adams; Sophie Walker; Peter Gumbel; and Simon Robinson.  See Gomez-Sanchez Decl. ¶¶ 10.  These individuals reside outside the United States.  Id. ¶¶ 14-17; Taylor Decl. ¶ 16.  Because Plaintiff apparently intends to rely heavily on those thirty-plus witness statements in this litigation, Time Inc. will face great

difficulty both logistically and monetarily in attempting to secure the appearance of witnesses for trial and/or to give deposition testimony in the United States.

Further, Plaintiff identifies in her Complaint Time Magazine and affiliate employees who do not reside in the United States,[4] and former employees and others, who do not appear to reside in the United States.[5]  See, e.g., Am. Compl. ¶¶ 25, 29, 41-45, 48-49, 64, 73-74, 81, 90, 93-94, 96-97.  In addition, Time Inc. would seek to rely on the testimony of Sue Brader and Lesley Swarbrick, who both work and/or worked in the U.K.  See Taylor Decl. ¶¶ 16-17; Gomez-Sanchez Decl. ¶¶ 12, 28.  These individuals, who reside outside of the United States, are alleged by Plaintiff to have, among other things, altered the terms and conditions of Plaintiff's employment in the U.K., terminated Plaintiff's employment in the U.K., received complaints from Plaintiff concerning her employment in the U.K., witnessed alleged discriminatory acts in the U.K., provided counseling to Plaintiff in the U.K., and/or worked in the Human Resources department of TMEL in the U.K. and had knowledge of her complaints.  See Am. Compl. ¶¶ 25, 29, 32-34, 41-45, 48-49, 64, 73-74, 81-82, 90, 93-94, 96-97.  See Gomez-Sanchez Decl. ¶¶ 12-28; Taylor Decl. ¶¶ 1, 9-17.

Moreover, Plaintiff alleges that Matt McAllester, a U.K. citizen that worked with Plaintiff in London (Taylor Decl. ¶ 15), was the architect of the discrimination and retaliation she suffered on the basis of a cat's paw theory.  See Am. Compl. ¶ 98 (the decision to terminate Plaintiff was made "on the basis of McAllester's discriminatory urgings").  Accordingly, McAllester's actions in the U.K., and any witnesses to such actions in the U.K., are highly material to this action.

---

[4] For example, Michael Taylor (U.K.) and Simon Shuster (Germany).  See Taylor Decl. ¶¶ 1, 17.

[5] For example: William Lee Adams, Sally Baxter (professional management consultant), Anoosh Chakelian,  Matt McAllester, Kharunya Paramaguru, Reena Sharma, Amy Threlfall, Sue Brader, Andy Bush, Conal Urquhart appear to be all based in the U.K.  See Taylor Decl. ¶ 16; Gomez-Sanchez Decl. ¶¶ 18-25, 28.

Time Inc. also would need to secure the testimony of Plaintiff's therapist(s) and doctor(s), whom she claims treated her and provided her with medication and therapy in the U.K. See Am. Compl. ¶¶ 86, 162(d), 163(e).  It is unclear how many doctors and therapists treated Plaintiff.

Accordingly, Time Inc. would need to compel and/or secure the testimony in the Southern District of New York of at least the eighteen (18) people identified above, the thirty (30) unnamed individuals that provided witness statements to Plaintiff, in addition to any individuals that worked with Plaintiff in the U.K., and any medical professionals that treated Plaintiff in the U.K., all of whom are located outside of the U.S.  Thus, assuming that one doctor and one therapist treated Plaintiff, Time Inc. would need to secure the testimony of at least fifty (50) people currently residing outside the U.S. to provide testimony in New York in this matter.

Such an undertaking would not only be logistically inefficient and expensive, but also without any clear mechanism or authority to compel attendance in the United States.  See Fed. R. Civ. P. 45; Banculescu, 2012 U.S. Dist. LEXIS 167980, at *22 (holding that the private interest factors do not favor maintaining the lawsuit in New York because individuals residing outside the U.S. are outside the subpoena power of the Court and "cannot be compelled to give evidence").  Even assuming that Time Inc. could compel the deposition testimony of those fifty (50) individuals in the U.S. it is estimated that round trip flights between London and New York, exclusive of hotels and deposition costs, will cost $115,000.  The cost would at least double in the event of a trial, where hotels would be necessary for multiple days.  See Gomez-Sanchez Decl. ¶¶ 30-32.  In short, the cost of transporting witnesses likely would exceed any potential damages in this litigation.

Therefore, the locations of material witnesses, the inconvenience of litigating this case in New York, and the cost effectiveness of having Plaintiff's claims heard in the U.K. weigh heavily in favor of dismissal.  See Lfoundry Rousset SAS, 2015 U.S. Dist. LEXIS 95165, at *16 ("The private interest factors support dismissal . . . . [because] the vast majority of witnesses are outside New York [and] . . . . [m]ost are in Europe."); see also Pollux Holding, Ltd., 329 F.3d at 75 (holding that the private interest factors weighed heavily in favor of dismissal because several key witnesses were available in England and plaintiffs have not demonstrated that any witnesses would be unavailable in England); McLaughlin, 1998 U.S. Dist. LEXIS 9703, *8; Ranza, 793 F.3d at 1078.

### 2.    Public Interest Factors

The public interest factors also weigh heavily in favor of dismissal.  The public interest factors the court should consider in ruling on the motion to dismiss include: the U.K.'s interest in deciding a dispute brought by a U.K. resident whose factual allegations supporting her claim occurred entirely while in the U.K.; avoiding the difficulties of applying foreign law; and imposing jury duty on individuals with no relation to the case.  See Lust, 501 Fed. Appx. at 15; Lfoundry Rousset SAS, 2015 U.S. Dist. LEXIS 95165, *16.

The U.K. has a strong local interest in adjudicating discrimination disputes and tort claims that arise in the U.K.  See, e.g., The Equality Act, 2010; Shogun Finance Limited v. Hudson (FC), [2003] UKHL 62 (Session 2002-03).  Here, Plaintiff, a U.K. resident, alleges she was discriminated and retaliated against while employed by TMEL, an entity operating in the U.K.  See Taylor Decl. ¶ 3; see generally Compl.  It is undisputed that the timely discriminatory conduct by McAllester and the effects of that conduct (Plaintiff's termination) occurred in the U.K., not the U.S.  See, e.g., Am. Compl. ¶¶ 98; Taylor Decl. ¶¶ 3-15; see also Lust, 501 Fed. Appx. at 15; Pollux Holding, Ltd., 329 F.3d at 76 (holding that England has a greater interest in

adjudicating disputes occurring there); Pik, 2010 U.S. Dist. LEXIS 65962, at *12; Esheva, 499 F. Supp. 2d at 500 (Cote, J.); McLaughlin, 1998 U.S. Dist. LEXIS 9703, at *11.

While Plaintiff may contend that the United States has an interest in enforcing Title VII and the ADEA with respect to its citizens because Plaintiff is a dual citizen of both the U.K. and U.S., any preferred status inherent in having one's claims under the laws of one's home country would apply equally to the laws of the U.K.  Cf. Seales, 2009 U.S. Dist. LEXIS 11855, at *35, *39 (holding that a dual citizen of the United States and Panama was afforded diminished deference in the choice the United States as a forum because he did not reside in the United States); Ranza, 793 F.3d at 1078-79 (noting that despite Plaintiff's U.S. citizenship, the Netherlands had a stronger public interest).

The allegation that certain discussions regarding Plaintiff took place in the U.S. does not compel a different conclusion.  Plaintiff "cannot overcome the many substantial ties this action has to England."  See McLaughlin, 1998 U.S. Dist. LEXIS at *11.  Indeed, TMEL, a U.K. entity, employed Plaintiff in the U.K (Taylor Decl. ¶¶ 5-8); her employment responsibilities were primarily conducted in the U.K. (Taylor Decl. ¶¶ 5-8); she entered into an employment agreement with TMEL in the U.K. (Taylor Decl. ¶ 5); Plaintiff's termination occurred in the U.K. (Taylor Decl. ¶¶ 9-14); and she alleges the harassment occurred in the U.K. allegedly by a U.K. citizen, Matt McAllester, the alleged architect of her termination.  See McLaughlin, 1998 U.S. Dist. LEXIS at *11 (dismissing the action on *forum non conveniens* grounds); Taylor Decl. ¶¶ 8, 15; see also Am. Compl. ¶¶ 40, 43, 74, 98.  Thus, the U.K. would have a more significant interest in resolving this dispute, and a New York jury would have no interest in hearing a dispute which occurred in the U.K.

In sum, all of the public interest factors weigh heavily in favor of dismissal on *forum non conveniens* grounds.

Therefore, for the reasons stated above, Plaintiff's claims should be dismissed on the grounds of *forum non conveniens*.

## II.   PLAINTIFF'S CLAIMS ARE TIME-BARRED BY THE 180-DAY STATUTE OF LIMITATIONS APPLICABLE TO CLAIMS UNDER TITLE VII AND THE ADEA BECAUSE SHE IS NOT A RESIDENT OF NEW YORK

Assuming, the Court retains jurisdiction over this matter, Plaintiff's discrimination claims are time-barred, in part.  The filing of a timely administrative charge with the EEOC or a local fair employment agency is a necessary prerequisite to commencement of suit in federal court under Title VII and the ADEA.  42 U.S.C. §2000e-5(e); 29 U.S.C. § 626(d); see also Holz v. Rockefeller & Co., 258 F.3d 62, 82-83 (2d Cir. 2001).  Failure to file a timely EEOC charge requires dismissal of Title VII and ADEA claims as time-barred.  Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996); Arias-Mieses v. CSX Transp., Inc., 630 F. Supp. 2d 328, 330 (S.D.N.Y. 2009).

As further detailed below, almost all of Plaintiff's claims are time-barred, and her Amended Complaint must be dismissed with prejudice, in part.

### A.   The 180-Day Statute Of Limitations Applies To Title VII And ADEA Claims Where The State Or Local Agency Charged With Investigating Claims Of Employment Discrimination Lacks Jurisdiction To Grant Relief

Pursuant to Title VII and the ADEA, a plaintiff must file a charge of discrimination with the EEOC within 180 days of any alleged unlawful employment practice, or within 300 days where there is a state or local agency "with the authority to grant or seek relief[.]" 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1).  The applicable federal regulations make clear that the longer 300-day limit applies only where a state or local agency has subject matter jurisdiction over the charge of discrimination.  See 29 C.F.R. § 1601.13(a)(2) ("Charges over which a [state

or local] agency has no subject matter jurisdiction are filed with the Commission upon receipt and are timely filed if received by the Commission within 180 days from the date of the alleged violation"); 29 C.F.R. § 1626.7(a) ("Potential charging parties will be advised that . . . such charge shall be filed with the [EEOC] . . . within 180 days of the alleged discriminatory action, or, in a case where the alleged discriminatory action occurs in a State which has its own age discrimination law and authority administering that law, within 300 days of the alleged discriminatory action."). Consistent with these regulations, the Second Circuit has held that the 180-day statute of limitations applies where, for example, the New York State Division of Human Rights lacks jurisdiction over a defendant employer. See Dezaio v. Port. Auth. of New York & New Jersey, 205 F.3d 62, 65 (2d. Cir. 2000).

Here, a 180-day statute of limitations applies. The State of New York and the City of New York (collectively referred to throughout as "New York") both maintain anti-discrimination statutes, i.e. the New York State Human Rights Law ("SHRL") and the New York City Human Rights Law ("CHRL"). N.Y. EXEC. LAW § 290, et seq.; N.Y.C. Admin. Code § 8-101, et seq. These statutes created local agencies (SDHR and CCHR) with authority to investigate complaints of discrimination. See N.Y. EXEC. LAW §§ 293, 295; N.Y.C. Admin. Code §§ 8-103, 8-105.

However, only New York residents may invoke the protection of these statutes, unless a non-resident can demonstrate she suffered an "impact" within the jurisdiction. See Hoffman v. Parade Pbls., 15 N.Y.3d 285, 289-91 (2010). An "impact" means more than a showing that any alleged discriminatory decisions were made in New York. Id. at 290-91. Indeed, the "impact requirement . . . confines the protections of the []CHRL [and SHRL] to those who are meant to be protected--those who work in [New York]." Id. at 288, 291 (holding there was no "impact" in

New York where the plaintiff resided in Georgia, but attended quarterly meetings in New York City, was managed from NYC, had contracts negotiated through NYC, and the decision to terminate him was made in NYC) (emphasis supplied); accord Fried v. LVI Servs., 500 Fed. Appx. 39, 42 (2d Cir. 2012).

In other words, an "impact" means more than a "tangential" relationship with New York. See Benham v. eCommission Solutions, LLC, 118 A.D.3d 605, 606 (1st Dept. 2014) (dismissing plaintiff's CHRL and SHRL claims for lack of subject matter jurisdiction because "the alleged conduct occurred while plaintiff was physically situated outside of New York . . . .") (emphasis supplied); Ghorpade v. MetLife, Inc., 2014 U.S. Dist. LEXIS 172408, at *6-*8 (S.D.N.Y. 2014) (allegations that plaintiff's employment was "centered" in New York City, though he was employed in India for over three years, were insufficient to proceed under the NYSHRL and NYCHRL); Ulrich v. Moody's Corp., 2014 U.S. Dist. LEXIS 145898, at *54 (S.D.N.Y. 2014) (report and recommendation), modified by 2014 U.S. Dist. LEXIS 138082 (S.D.N.Y. 2014); EEOC v. Bloomberg LP, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013).

For example, in Ulrich, the plaintiff, a non-resident of New York, claimed that his New York managers were responsible for alleged pay disparities, corporate policies, and had knowledge of plaintiff's discrimination claims. However, such allegations were insufficient to "claim protection under the []SHRL, since the purported retaliation did not have an impact" in New York. Ulrich, 2014 U.S. Dist. LEXIS 145898, at *54. Indeed, "the impact requirement is intended to be relatively simple for courts to apply and litigants to follow, [to] lead[] to predictable results, and [to] confine[] the protections of the []CHRL and [SHRL] to those who are meant to be protected--those who work in [New York]." Ghorpade v. MetLife, Inc., 2014 U.S. Dist. LEXIS 172408, at *6-*8 (quoting Hoffman, 15 N.Y.3d at 291) (alternations in

original).  Plaintiff's failure to assert a substantive claim under either the SHRL or CHRL demonstrates that Plaintiff cannot allege that the actions of which she complains had an impact in New York.  Plaintiff concedes she worked and resided in the U.K. throughout her employment.  See, e.g., Am. Compl.  ¶¶ 3, 16.  Accordingly, the SDHR and CCHR lacked authority to grant Plaintiff any relief, and the period for filing a charge with the EEOC under Title VII and ADEA was 180-days from the date of any alleged discriminatory actions.  As set forth below, Plaintiff failed timely to file her Charge and, therefore, the majority of her claims are barred by the failure to timely exhaust her administrative remedies.

**B.      The Well-Pled Factual Allegations Confirm That A Majority Of Plaintiff's Claims Are Time-Barred By The 180 Day Statute Of Limitations**

Plaintiff alleges that she filed a charge of discrimination with the EEOC on July 15, 2015. See Am. Compl. ¶ 11.  Thus, any and all alleged discriminatory actions which occurred prior to January 16, 2015, *i.e.,* more than 180 days before Plaintiff filed her charge with the EEOC, are time barred and must be dismissed.  Accordingly, all of Plaintiff's allegations of alleged "harassment" and age and gender discrimination that pre-date January 16, 2015, including her claims that pre-date her December 2014 through August 2015 sabbatical, are time-barred by the 180-day statute of limitations applicable to Title VII and ADEA claims and must be dismissed.

**III.     PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM FAILS TO STATE A CLAIM AND, ALTERNATIVELY, IS BARRED IN PART BY LACHES**

As set forth above, Plaintiff's claims should be dismissed on *forum non conveniens* grounds.  To the extent the Court retains jurisdiction over this action, the Court must nevertheless dismiss Plaintiff's fraudulent inducement claim for numerous reasons.

Plaintiff's allegations purporting to support her fraudulent inducement claim are vague, conclusory, and fail to satisfy the applicable pleading standard under Rule 9(b).  See FED. R. CIV. P. 9(b) ("A party must plead fraud . . . with particularity"); see also Ashcroft v. Iqbal, 556 U.S.

662, 678-681 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  Plaintiff's allegation that Time Inc. intended to defraud Plaintiff in order to "advance the career of a favored male employee," is dubious and implausible.  See Am. Compl. ¶ 157.  It requires the Court give credence to Plaintiff's conspiracy theory that Time Inc. engaged in an elaborate scheme beginning in 2011 (see Am. Compl. ¶ 156(a)) "to sideline her so it could portray her eventual discriminatory dismissal as a redundancy" in January 2015.  See Am. Compl. ¶¶ 93-94, 157.  To summarize, Plaintiff claims that Time Inc. engaged in a three-year plan to terminate her employment, in order to advance the career of Matt McAllester.  This theory is the epitome of fanciful.

Plaintiff alleges that Time Inc. made the following fraudulent promises to induce her to remain employed: Jim Frederick promised she could select her own senior editors if she was appointed Europe Editor in 2012, but omitted that he had selected one already; Bobby Ghosh requested that she "relinquish" her position as Europe Editor in favor of a role as Editor-at-Large, and told her that Time Inc. would devote resources to promote her; promised Plaintiff she was not and would not be demoted; and advising Plaintiff that McAllester was not and would not be her supervisor.  See Am. Compl. ¶ 156.  As a matter of law, Plaintiff's allegations are insufficient to withstand a motion to dismiss.

Importantly, Plaintiff simply cannot assert a fraud claim because job offers are central, not collateral, to employment, and "accordingly a hidden intention not to perform gives rise to a breach of contract claim, not a fraud claim."  See Jelks v. Citibank, N.A., 2011 U.S. Dist. LEXIS 381, *11 (S.D.N.Y. 2011).  Plaintiff's allegations that Time Inc. "breached" its promises to her about the Europe Editor and Editor-at-Large positions are simply contract claims disguised as tort claims.  Id.

Nevertheless, to avoid dismissal of a fraudulent inducement claim under Rule 12(b)(6), a plaintiff must plausibly allege "[1] a misrepresentation or a material omission of fact[; 2] which was false and known to be false by defendant[; 3] made for the purpose of inducing the other party to rely upon it[; 4] justifiable reliance of the other party on the misrepresentation or material omission[; and 5] injury."  See Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996); see also Allison v. Round Table Inv. Mgmt. Co., LP, 2010 U.S. Dist. LEXIS 113937, **7-8 (S.D.N.Y. 2010); Pal v. N.Y. Univ., 2007 U.S. Dist. LEXIS 99042, *13 (S.D.N.Y. 2007).  Each of these criteria must be pled with specificity in order to avoid dismissal.

### A.   As An At-Will Employee, Plaintiff Could Not Have Justifiably Relied On Any Alleged Material Misrepresentation Or Omission

Because Plaintiff specifically brings her fraudulent inducement claims under New York law (see Am. Compl. Count 6, page 47), she admittedly submits to the application of New York law to her claims, without regard to any potential conflict of law.  Accordingly, New York's at-will employment doctrine is fatal to her fraudulent inducement claims.

It is well-established that absent a "'constitutionally impermissible purpose, a statutory proscription, or any express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.'"  See Smalley v. Dreyfus Corp., 10 N.Y.3d 55, 58 (2008) (quoting Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 305 (1983)).  Plaintiff does not allege the existence of any limitation on the application of the at-will doctrine.  See generally Am. Compl.

Plaintiff claims she justifiably relied on the statements and omissions made to her by the late Jim Frederick between 2011 and 2012, and Bobby Ghosh in 2013 as described above that specifically relate to future changes in her employment, such as changes in title and the addition of staff.  See Am. Compl. ¶ 156.  However, an at-will employee can be terminated at any time

and, "[i]n such circumstances, any reliance on representations of future intentions, such as job security or future changes, would be deemed unreasonable as a matter of law."  Meyercord v. Curry, 832 N.Y.S.2d 29, 31 (1st Dept. 2007).  Plaintiff, however, is under the misimpression that she had an entitlement to her positions at TMEL even alleging that she would not have "relinquished" her position as Europe Editor had she known all the facts.  See Am. Compl. ¶¶ 157, 160.  Plaintiff had no entitlement to continued employment.

Thus, as a matter of law, Plaintiff, an at-will employee, cannot justifiably rely on any statements made to her concerning future changes to her employment, such as the addition of staff or plans to treat Plaintiff as a "Jedi Knight" of writing.  See Am. Compl. ¶¶ 30-31, 63. Plans and budgets change in business, and it does not mean that at the time such potential changes were discussed, they were not believed.  See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 187 (2d Cir. 2004).

### B.   Plaintiff Does Not Allege With Any Particularity The Specific Damages She Suffered As A Result Of The Alleged Fraud

In New York, a plaintiff must plead damages for fraud with particularity and not with speculation.  See Pal, 2007 U.S. Dist. LEXIS 99042, at *16.  Under the "out-of-pocket rule," damages are calculated by "ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount of value of the consideration exacted as the price of the bargain."  See Allison, 2010 U.S. Dist. LEXIS 113937, at *19; Pal, 2007 U.S. Dist. LEXIS 99042, at *13.  "Damages are to be calculated to compensate plaintiff for what they lost because of the fraud, not compensate them for what they might have gained."  Allison, 2010 U.S. Dist. LEXIS 113937, at *19; Connaughton, 135 A.D.3d 535, 538 (1st Dept. 2016).

Plaintiff details two separate sets of damages based on (1) her acceptance of the position of Europe Editor in 2012, which resulted in the denial of her ability to hire two Senior Editors as

promised; and (2) her acceptance of the position of Editor at Large in 2013.  See Am. Compl. ¶¶ 30-31, 162-163.  The damages alleged are conclusory and speculative.

Plaintiff alleges she suffered the following alleged damages when she was fraudulently induced to accept the position of Europe Editor in 2012: (1) "the loss of the salary that would have been due to her and she would have demanded;" (2) "the chance to perform" to the best of her potential, "which would likely have led to further promotion, in line with her past career trajectory;" (3) "the chance of accepting any other senior editor job opportunity at another publication;" and (4) unspecified "out of pocket losses" for alleged emotional and psychological distress.  See Am. Compl. ¶¶ 30-31, 162 (emphasis supplied).

Plaintiff further alleges she suffered the following alleged damages when she was fraudulently induced to accept the position of Editor-at-Large in 2013: (1) "the loss of professional and financial benefits associated with the Europe Editor" position, because she would either still been Europe Editor today, or could have sought damages for being "unlawfully removed" from the position; (2) "the opportunity to seek any other senior editor job opportunity at another publication; (3) the termination of Plaintiff's employment; (4) emotional and psychological distress; and (5) unspecified "out of pocket losses" for alleged emotional and psychological distress.  See Am. Compl. ¶ 162 (emphasis supplied).

Calculating Plaintiff's alleged damages would require the Court to rely upon inference upon inference, and chance possibility, to derive an appropriate award: if she had known the true nature of the position, she would have demanded more compensation; if she had known about the true nature of the position she would have performed better, and would have been promoted; if she had known about the true nature of the position, she would have had the opportunity to be hired elsewhere; if she had known the true nature of the position, she would either have been

Europe Editor today, or sought damages for unlawful removal; if she had known about the true nature of the position, she would have had the opportunity to be hired elsewhere; if she had known about the true nature of the position she would not have been terminated; and if she had known about the true nature of the position, she would not have suffered emotional and psychological distress.  See Pal, 2007 U.S. Dist. LEXIS 99042, at *16.

Plaintiff's speculative damages are not recoverable.  Id. ("The Court will not engage in such speculation.").  Even Plaintiff's unspecified damages for "out of pocket" emotional distress damages are speculative.  Indeed, nowhere in her Amended Complaint does Plaintiff quantify with any precision the damages she suffered because of the alleged fraud.  Plaintiff provides no numerical value to the alleged losses she claims, requiring the Court to guess as to her specific damages, which is insufficient under the law to plead a fraudulent inducement claim in New York.  Id. at *16 and n.7 (holding that a court cannot speculate as to the measure of damages on a claim for fraudulent inducement); Allison, 2010 U.S. Dist. LEXIS 113937, at *20.

Even allegations that Plaintiff would have earned more money, or would have remained employed, or had been able to seek damages for an unlawful removal are speculative and not recoverable.  Kregos v. AP, 3 F.3d 656, 665 (2d Cir. 1993) ("[W]e are not permitted to speculate what potential award he might have obtained from winning a . . . case . . . ."); Connaughton, 135 A.D.3d at 538 ("[P]laintiff's claim that he would have received better remuneration had he partnered with a different entity is inherently speculative and would require any factfinder to engage in conjecture."); Allison, 2010 U.S. Dist. LEXIS 113937, at *20.

Plaintiff's failure specifically to identify the damages she suffered requires dismissal of her fraudulent inducement claims.

### C.   Plaintiff Has Not Alleged With Particularity That Time Inc. Intended To Defraud Her

Even assuming that Plaintiff specifically identified the damages she suffered, she failed to identify with particularity Time Inc.'s intent to defraud her.  To demonstrate intent, Plaintiff must identify with particularity (1) the "concrete benefits" Time Inc. received by defrauding her; or (2) that Time Inc. knowingly made false statements to Plaintiff through "conscious behavior" to defraud her.  See Allison, 2010 U.S. Dist. LEXIS 113937, at *10-*12.  Identifying a "generalized motive" to defraud, or, as Plaintiff did here, merely identifying the alleged fraudulent statements without facts supporting an inference that Time Inc. acted to defraud her, are insufficient to maintain a claim for fraudulent inducement.  Id. at *11-*12.

As noted above, Plaintiff claims that Time Inc. engaged in an elaborate scheme beginning in 2011 (see Am. Compl. ¶ 156(a)) as a "general plan to sideline her so it could portray her eventual discriminatory dismissal as a redundancy" in January 2015 in order to advance the career of a favored male employee[.]"  See Am. Compl. ¶¶ 93-94, 157.  Such allegations fail to demonstrate a scintilla of fraudulent intent.  Even putting aside Plaintiff's far-fetched claims, she does not identify any motive or concrete and particularized benefit Time Inc. purportedly received in making the alleged fraudulent inducements or representations.  See Allison, 2010 U.S. Dist. LEXIS 113937, at *11.

Therefore, Plaintiff's failure specifically to attribute intent to Time Inc. is a separate ground requiring dismissal of her fraudulent inducement claims.

### D.   Plaintiff Cannot Demonstrate Causation

Even assuming that Plaintiff specifically identified the damages she suffered and Time Inc.'s intent to defraud, Plaintiff has not alleged facts to establish the requisite causal relationship between the alleged misrepresentation(s) and her alleged injuries.  Plaintiff does not allege with

any particularity that the alleged fraudulent statements made by Jim Frederick or Bobby Ghosh were the proximate cause of her compensatory damages, damage to her professional reputation, lost wages, benefits and other financial losses, or emotional distress.  See generally Am. Compl.

Any alleged damages Plaintiff claims must be independent from other causes.  See Kregos, 3 F.3d at 665.  Plaintiff's alleged damages are not independent because the entire Amended Complaint spins a narrative that Matt McAllester derailed her career because of gender and/or age discrimination, and/or retaliation.  See generally Am. Compl.

Indeed, Plaintiff concedes she trusted the late Jim Frederick's decision to hire Matt McAllester as a Senior Editor, despite being promised the authority to hire two Senior Editors. Id. ¶ 35.  It was only after she began working with Matt McAllester at TMEL that Plaintiff claims Matt McAllester precipitated the alleged harm she suffered, including the termination of her employment.  Id. ¶¶ 40-43, 91, 157.  Thus, none of the damages Plaintiff alleges can be traced to any claimed fraudulent inducement, but instead flow from Matt McAllester's alleged intervening and singular actions.  Kregos, 3 F.3d at 665 (citing Bennett v. United States Trust Co., 770 F.2d 308, 316 (2d Cir. 1985)).  Plaintiff essentially claims she suffered the same damages from discrimination and/or retaliation as alleged in her fraudulent inducement claim. See Am. Compl. ¶¶ 117-166.

Accordingly, Plaintiff's inability to allege damages independent of other causes is fatal to her fraudulent inducement claims.

**E.     Plaintiff's Fraudulent Inducement Claim Stemming From Her 2012 Acceptance Of The Europe Editor Position, And The Denial Of Two Senior Editors Is Barred By The Doctrine Of Laches**

In order to dismiss a claim under the doctrine of laches, Defendant must be demonstrate that (1) Plaintiff was aware of the claim; (2) she inexcusably delayed filing the action; and (3) Defendant was prejudiced.  See Bakalar v. Vavra, 500 Fed Appx. 6, 8 (2d Cir. 2012).  Here,

Plaintiff's claim that Time Inc. fraudulently induced her in 2012 to accept the Europe Editor position by promising the authority to hire two Senior Editors is barred by the doctrine of laches.

As alleged by Plaintiff, she was induced to accept the position upon being promised by the late Jim Frederick the ability to hire two Senior Editor positions in 2012. See Am. Compl. ¶ 25. Plaintiff claims that Jim Frederick breached his promise in 2012 when he hired Matt McAllester as a Senior Editor and precluded her from filling the other position. Id. ¶¶ 30-33, 41, 43. Accordingly, Plaintiff had actual knowledge of her alleged claim for fraudulent inducement in 2012.

However, Plaintiff inexplicably delayed until 2017, filing this lawsuit alleging fraudulent inducement for actions directly attributable to Jim Frederick. Unfortunately, Jim Frederick passed away in 2014 at the age of 42. See Ex. O, annexed to the Gomez-Sanchez Decl. The death of Jim Frederick deprives Time Inc. of a material witness to Plaintiff's alleged claims of fraudulent inducement. Indeed, Plaintiff alleges that he was instrumental in perpetrating the alleged fraud. Accordingly, Time Inc. would be substantially prejudiced because it would extremely difficult, if not impossible, to refute Plaintiff's testimony due to Plaintiff's inexplicable delay in bringing her fraudulent inducement claim, and must be dismissed as a result.

## CONCLUSION

For all of the reasons stated herein, and those in the Declarations of Daniel Gomez-Sanchez and Michael Taylor, Defendant requests that the Court dismiss Plaintiff's Amended Complaint pursuant to the doctrine of *forum non conveniens*; or in the alternative on the grounds that Plaintiff's discrimination and retaliation claims are time-barred, and her fraudulent inducement claims fails to state a claim.

Firmwide:151478652.6 082596.1006