```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
CATHERINE MAYER,                         :
                                         :           17cv5613(DLC)
                         Plaintiff,      :
                                         :           OPINION AND ORDER
              -v-                        :
                                         :
TIME, INC.,                              :
                                         :
                         Defendant.      :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the plaintiff:

Frederic C. Weiss
125 East 55th Street, 4th Floor
New York, NY 10022

Stephen G. Grygiel
Silverman Thompson Slutkin White, LLC
201 N. Charles Street, Suite 2600
Baltimore, MD 21201

Ann McAllister Olivarius
McAllister Olivarius
63 Putnam Street PO Box 173
Saratoga Springs, NY 12866

For the defendant:

Lisa M. Griffith
Daniel Gomez-Sanchez
Littler Mendelson, PC
290 Broadhollow Road, Suite 305
Melville, NY 11747

Jean L. Schmidt
Littler Mendelson, PC
900 Third Avenue
New York, NY 10022

DENISE COTE, District Judge:

This employment discrimination suit alleges sex and age discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"). Defendant has moved to dismiss the action under the doctrine of forum non conveniens. For the reasons that follow the defendant's motion to dismiss is conditionally granted.

BACKGROUND

Plaintiff Catherine Mayer is a dual citizen of the United States ("U.S.") and of the United Kingdom ("U.K.") and she resides in the U.K. In 2004, TMEL Time Magazine Europe Limited ("TMEL"), a company organized under U.K. law and operating in London, U.K., recruited and hired Mayer to work as a journalist in London. TMEL is a wholly-owned subsidiary of TIME Atlantic Europe Holdings Limited ("Time Holdings"), a U.K. company registered to the same U.K. address as TMEL. Time Holdings is a wholly-owned subsidiary of defendant TIME Inc. ("TIME"), a company incorporated under Delaware law with its principal place of business in New York.

When TMEL hired Mayer in 2004, she reported directly to TIME's International Editor in New York. In 2006, plaintiff was

2

promoted to the role of London Bureau Chief. In that role, she continued to report to supervisors in New York. In 2012, TIME's Managing Editor announced Mayer's promotion to Europe Editor. He had told Mayer that she would be able to recruit two new Senior Editors to help her carry out her work.

As Europe Editor, Mayer managed all TMEL staff and budgets, oversaw TMEL editions of the magazine, and commissioned and edited pieces. She was assigned tasks and projects by her supervisors in New York. Instead of being able to select her own Senior Editors, TIME's Managing Editor informed her she would be given just one Senior Editor and that it would be Matt McAllester. McAllester began working in London as Senior Editor in June 2012.

In September 2012, TIME's Managing Editor suggested to Mayer that she undergo training with an Executive Coach at Pegasus Partnership Ltd. ("Pegasus"), in the U.K. The training ended successfully in 2013. By May 2013, however, two TIME executives effectively delegated all of Mayer's duties to McAllester.

On August 2, 2013, after all of her editing duties had been reassigned to McAllester, plaintiff was informed by a TIME executive that her title, Europe Editor, was to be eliminated. In September, however, McAllester was promoted to Europe Editor.

Mayer took a sabbatical in 2014. When she returned to TMEL in November 2014, she reported to McAllester. Mayer alleges that McAllester created a hostile work environment.

On January 6, 2015, Mayer was informed by a London-based Human Resources representative that her employment was at risk of termination. Plaintiff retained counsel to pursue her claims in the U.S; her lawyer contacted TIME and its attorneys on March 31, 2015. Mayer's employment was formally terminated on April 9, 2015.

## PROCEDURAL HISTORY

Plaintiff filed an Intake Questionnaire alleging employment discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on July 15, 2015. She filed a notarized charge with the EEOC on August 19, 2015. On April 28, 2017, the EEOC issued a notice of a right to sue.

Plaintiff commenced this action on January 24, 2017. On November 3, the defendant moved to dismiss the plaintiff's complaint. On November 28, Mayer filed an amended complaint ("FAC"). On December 8, 2017, the defendant moved to dismiss the FAC pursuant to the doctrine of forum non conveniens or, in the alternative, to dismiss the complaint in part, pursuant to 12(b)(6), Fed. R. Civ. P. The motion became fully submitted on January 18, 2018.

DISCUSSION

A court has broad discretion in applying the principle of forum non conveniens. In exercising this discretion, it applies the three-step analysis that the Court of Appeals described in Iragorri v. United Techs. Corp., 274 F.3d 65, 72-76 (2d Cir. 2001).

> [A] court considers (1) the degree of deference to be afforded to the plaintiff's choice of forum; (2) whether there is an adequate alternative forum for adjudicating the dispute; and (3) whether the balance of private and public interests tips in favor of adjudication in one forum or the other.

Waldman v. Palestine Liberation Organization, 835 F.3d 317, 334 n.12 (2d Cir. 2016) (citing Norex Petroleum Ltd. V. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005)).

A court begins its analysis in step one with "a strong presumption in favor of the plaintiff[s'] choice of forum." Norex, 416 F.3d at 154 (citation omitted). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id. (citation omitted).

The degree of deference to be accorded a plaintiff's choice of forum "moves on a sliding scale" and is correlated with the "degree of convenience" that the choice reflects. Id. (citation omitted). "The more it appears that a domestic or foreign

5

plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." Id. (citation omitted). Conversely, the more that a plaintiff's choice of a United States forum appears motivated by forum shopping, the less deference that choice commands. Id. Factors considered in determining whether a plaintiff's choice of forum was likely to have been motivated by convenience include:

> (1) the convenience of the plaintiff's residence in relation to the chosen forum, (2) the availability of witnesses or evidence to the forum district, (3) the defendant's amenability to suit in the forum district, (4) the availability of appropriate legal assistance, and (5) other reasons relating to convenience or expense.

Id. at 155 (citing Iragorri, 274 F.3d at 72).

"[T]he choice of a United States forum by a foreign plaintiff is entitled to less deference." Iragorri, 274 F.3d at 71.

> [T]he selection of a U.S. forum by a U.S. citizen living abroad [is] entitled to less deference than the choice of the same forum by a citizen residing in the forum because with respect to the expatriate U.S. citizen it would be less reasonable to assume the choice of forum is based on convenience.

Pollux Holding Ltd. V. Chase Manhattan Bank, 329 F.3d 64, 73 (2d Cir. 2003) (citation omitted). Further, a "plaintiff's choice of the defendant's home forum" does not provide a "reliable proxy for convenience." Id. at 74. "[A] plaintiff's choice to

6

initiate suit in the defendant's home forum -- as opposed to any other where the defendant is also amenable to suit -- only merits heightened deference to the extent that the plaintiff and the case possess bona fide connections to, and convenience factors favor, that forum." Id.

The Court of Appeals has also identified factors indicative of forum shopping:

> (1) attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, (2) the habitual generosity of juries in the United States or in the forum district, (3) the plaintiff's popularity or the defendant's unpopularity in the region, or (4) the inconvenience and expense to the defendant resulting from litigation in that forum.

Norex, 416 F.3d at 155 (citing Iragorri, 274 F.3d at 72).

A forum is generally adequate if defendants are amenable to service of process there, but it may be inadequate if the remedy it offers "is clearly unsatisfactory," such as where the alternative forum "does not permit litigation of the subject matter of the dispute." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981). The alternative forum is not inadequate simply because it does not afford plaintiffs the identical causes of action or relief available in the plaintiff's chosen forum. Norex, 416 F.3d at 158.

Where a forum would otherwise be adequate, a plaintiff may not escape forum non conveniens dismissal by taking actions that render the alternative forum defective or imperfect. See

7

Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV, 569 F.3d 189, 202-03 (4th Cir. 2009); see also MBI Grp., Inc. v. Credit Foncier du Cameroun, 616 F.3d 568, 572 (D.C. Cir. 2010) ("A conditional forum non conveniens dismissal protects a plaintiff against the possibility that the foreign forum will not hear his case. It does not give the plaintiff license to deliberately prevent his suit in the foreign court from going forward in order to render an alternative forum defective."); In re Bridgestone/Firestone, Inc., 420 F.3d 702, 707 (7th Cir. 2005) (same); Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1248 n.10 (5th Cir. 1983) (same).

Finally, in step three, a court must balance both public and private interest factors. Private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Iragorri, 274 F.3d at 73-74 (citing Gulf Oil Corp. V. Gilbert, 330 U.S. 501, 508 (1947)). These factors are considered in light of the particular issues likely to be tried, including whether the plaintiff's damages are disputed and where the evidence of damages is likely to be more accessible. Id. In weighing these factors, a court must determine whether or not those hardships that the defendants would suffer if the case

8

were to remain in this district outweigh the hardships the plaintiffs would suffer if the case were dismissed and the plaintiffs forced to refile in an alternative forum. Pollux, 329 F.3d at 75.

Public interest factors include administrative inefficiency in trying a case in a busy court and away from the locus of the injury; the burden that jury duty may impose on the community if the case is tried in a venue with no connection to the issues in dispute; for cases that affect many people, the public's interest in having easy access to the trial court proceedings; a community's interest in having a local case decided at home; and, in a diversity case, the public interest in having the case decided in the jurisdiction whose law will govern the case. Iragorri, 274 F.3d at 74. An action should be dismissed on the ground of forum non conveniens "only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable," taking into account the balance of private and public interests. Id. at 74-75.

I. Deference to Plaintiff's Choice of Forum

Applying the Iragorri factors, the plaintiff's choice of forum is entitled to significantly reduced deference. Although Mayer is a United States citizen, she is also a citizen of the United Kingdom and resides in London. Her claims arise out of

9

work she performed in London for a U.K. employer.  This forum is not convenient for plaintiff.  Plaintiff's choice of forum appears to have been motivated by forum shopping: an expectation that any award of damages will be greater in the United States.

The plaintiff emphasizes that material events related to this litigation took place in New York.  She contends that most of those who hired her and those to whom she reported worked in New York.  She alleges that the decisions that led to her firing were also made in New York.  Defendant, however, submits that the material events at issue took place in the U.K.: plaintiff worked in London and was hired and fired in London.  Her claim of discrimination largely rests on her relationship with a U.K. colleague.  The defendant has succeeded in showing that any deference to which the plaintiff's choice of forum is entitled is substantially reduced by the strong connections this litigation has to a foreign venue, its limited connection to this forum, the convenience of the parties, and the evidence that the plaintiff has engaged in forum shopping.

II. The United Kingdom as an Adequate Forum

Plaintiff concedes that the United Kingdom would be an adequate alternate forum "if TIME is amenable to service of process there and the U.K. permits litigation of plaintiff's

claims." TMEL is unquestionably subject to service of process in the U.K., and TIME has consented "to service in the UK."[1]

Plaintiff argues that TIME's consent to service comes too late: TIME's delay has caused the statute of limitations to run on plaintiff's claims. The parties address only those claims arising under The Equality Act as apparently time-barred. See The Equality Act 2010, c. 15, § 123 ("proceedings . . . may not be brought after the end of the period of 3 months starting with the date of the act to which the complaint relates").[2] Defendant argues, and plaintiff does not dispute, that her fraudulent misrepresentation claim would not be time-barred.

To the extent that any of plaintiff's claims are time-barred in the U.K., that limitation is a result of plaintiff's

---

[1] To the extent that there is any meaningful difference between consenting to service in the U.K. and submitting to the jurisdiction of the U.K. courts, the defendant has agreed to comply with any condition of dismissal that it submit to jurisdiction in the U.K.

[2] The Equality Act's statute of limitations provision apparently offers a U.K. court the ability to set aside the time limit, allowing a plaintiff to bring a proceeding "at the end of such other period as the employment tribunal thinks just and equitable." The Equality Act 2010, c. 15, § 123(1)(b). Although the parties do not discuss the statute of limitations under the U.K.'s Employment Rights Act, any claims arising under that law would likely be time-barred as well. See Employment Rights Act 1996, c. 18, §111(2)(a) (requiring complaints to be brought within three months of the effective date of termination). That law, too, contains a provision that allows a tribunal, in an exercise of its discretion, to hear claims that would otherwise be time-barred.

decision to pursue legal remedies in the United States in the months after her employment was terminated, rather than bring claims in the United Kingdom. Plaintiff should not be rewarded for this choice. Moreover, the plaintiff launched the EEOC process more than three months after the April 9, 2015 termination of her employment: she filed an Intake Questionnaire on July 15, 2015. Accordingly, given her own delay in initiating litigation in her chosen forum there is no unfairness in observing that a dismissal here may well result in her loss of a cause of action under The Equality Act.

Plaintiff protests that TIME was not amenable to service in the U.K. and TMEL could not properly be brought before the EEOC. It is unnecessary to engage with these issues in any detail. TIME has consistently taken the position that TMEL is the appropriate defendant in this suit. In any event, TIME has now consented to service in the U.K. Because any U.K. statute of limitations impediment to plaintiff's prosecution of this case in the U.K. is a result of her informed litigation strategy, this Court will not refuse to dismiss this action on <u>forum non conveniens</u> grounds because of the three month limitations period for an Equality Act Claim.

Finally, plaintiff argues that the English Employment Tribunal has limited power to compel the testimony of foreign residents. First, Mayer never directly addresses defendant's

contention that the majority of the witnesses in this case are based outside of the U.S. and, presumably, found in the U.K: she argues only that defendant has inflated the number of witnesses. She nevertheless concedes that at least sixteen of the witnesses are in the U.K., including McAllester, the TMEL employee whose actions are largely the basis of her discrimination claims. This concern, therefore, is diminished.

Additionally, it is well-established that British courts are an adequate alternative forum for resolving disputes that may impact American corporations or citizens. See, e.g., Pollux, 329 F.3d at 75 (finding UK an adequate alternative forum that "permits litigation to resolve commercial disputes"); Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 101 (2d Cir. 2000) ("British courts [are] exemplary in their fairness and commitment to the rule of law."); Capital Currency Exchange N.V. v. National Westminster Bank PLC, 155 F.3d 603, 610 (2d Cir. 1998) (finding the U.K. an adequate alternative forum even though plaintiffs may not be able to recover certain kinds of damages there).

III. Balance of Factors

The private and public interest factors can be addressed quickly. Collectively, they weigh in favor of transfer and

13

overcome any deference to which plaintiff's choice of forum is entitled.

Regardless of where this lawsuit is finally litigated, there are undoubtedly witnesses that will need to travel. Most of the relevant evidence and witnesses, however, is either in the U.K. or easily obtained in the U.K.[3] The two key witnesses in this employment discrimination case are the plaintiff and McAllester, both of whom are U.K. citizens. Moreover, the discrimination plaintiff alleges she faced took place in London. Even if some decisions with respect to plaintiff's employment were made in New York, those decisions were implemented and felt in the U.K. Plaintiff was notified of the possibility and, eventually, reality of her termination over several meetings in London. Those meetings took place with London-based TMEL employees.

The U.K. has a strong public interest in adjudicating this case, evidenced by the country's robust laws governing

---

[3] The location of the tribunal is largely irrelevant to obtaining electronically stored documents -- like emails and drafts of articles -- which will presumably comprise most of the documentary discovery in this case. See, e.g., BMR & Associates, LLP v. SFW Capital Partners, LLC, 92 F. Supp. 3d 138, 142 (S.D.N.Y. 2015) ("Both parties have argued that they will require documents from the forum other than the one in which they wish to litigate; with most, if not all, of the documentary evidence in electronic form, however, this has little impact on the convenience of litigating in either country.")

14

employment and gender discrimination.[4]  The target of the alleged discrimination is a London-based, U.K. citizen who was employed by a U.K. company.  She was allegedly the victim of discrimination at the hands of another U.K. citizen.  The U.K. surely has a strong interest in this case.

Plaintiff argues that New York has an "equally strong" public interest in the case.  Not so.  The alleged actual discrimination was not felt or even implemented in New York.  Even if New York has an interest in the case because the defendant is a corporation that has significant ties to New York, New York's interest is substantially less than the U.K.'s.  This is, at its core, a local case that should be tried at home, in the U.K.

## CONCLUSION

The defendant's December 8, 2018 motion to dismiss on the ground of forum non conveniens is granted, on the condition that TIME, Inc. will consent to service of process in the U.K. and submit to the jurisdiction of a U.K. tribunal, provided that the plaintiff files an action in the U.K. within 90 days of the entry of this Order.

---

[4] Plaintiff herself has a keen interest in the U.K.'s gender discrimination law and policies; she is a founding member of the U.K.'s Women's Equality Party.

The Clerk of Court shall close this case.

Dated: New York, New York
April 9, 2018

_____
DENISE COTE
United States District Judge